UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRANDON JASON FLAKES,            )
# 603408,                        )
                                 )
            Petitioner,          )
                                 )        Case No. 1:13-cv-889
v.                               )
                                 )        Honorable Paul L. Maloney
CARMEN PALMER,                   )
                                 )
            Respondent.          )
_____)

**<u>REPORT AND RECOMMENDATION</u>**

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner's convictions stem from the October 31, 2006, killing of Linzy Reeves.  On April 27, 2010, a Kent County Circuit Court jury found petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b.  Petitioner was sentenced as a third-offense habitual offender to life imprisonment for the murder conviction and to two years' imprisonment for the felony-firearm conviction.

After unsuccessful attempts to overturn his conviction in state court, petitioner filed this habeas corpus petition.  Petitioner seeks federal habeas corpus relief on the same six grounds rejected by Michigan's courts:

> I.      Petitioner's due process rights were violated by the introduction
>         of irrelevant and unfairly prejudicial testimony advising the jury
>         of petitioner's incarceration and drug dealing.

II.     Petitioner was deprived of due process by prosecutorial misconduct.  Trial counsel was ineffective when he failed to object.

III.    Petitioner's due process rights were violated where the instructions on second-degree murder excluded an element from the offense.  Trial counsel was ineffective when he failed to object.

IV.     Petitioner was entitled to a lesser included offense instruction of manslaughter.  Trial counsel was ineffective when he failed to request such an instruction.

V.      The evidence presented at trial was insufficient to support the jury's verdict finding petitioner guilty of second-degree murder.

VI.     Petitioner's appellate counsel was ineffective for failure to file a timely motion for a new trial.

(Amended Petition at 6-16, ECF No. 10, PageID.174-84).

Respondent argues that the petition should be denied because all grounds raised by petitioner lack merit.  Further, respondent argues that Grounds I through IV are also barred by procedural default.[1]  (ECF No. 17).

Judge Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts.  After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief.  Petitioner has not shown that the state court decisions rejecting

---

[1]This Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

the grounds raised in the petition were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or that they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  I recommend that the petition be denied on the merits.

### Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ((" '[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given

-3-

effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits " 'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.' "  *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 779 (2010)).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "Section 2254(d) reflects that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal."  *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings – not dicta – of Supreme Court decisions.  *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none

of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.).  "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *Id.*  (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be " 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)); *see Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (*per curiam*).  Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Dunn v. Madison*, 138 S. Ct. 9, 11 (2017) (*per curiam*).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 567 U.S. at 48-49); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' ").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."

*Wood v. Allen*, 558 U.S. 290, 301 (2010).  Section 2254(d)(2) requires that this Court accord the state trial court substantial deference.  If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.  *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## **Proposed Findings of Fact**

### A.    **Circuit Court Proceedings**

Petitioner was charged with first-degree felony murder and possession of a firearm during the commission of a felony.  His eight-day trial concluded with the jury's verdict finding petitioner guilty of second-degree murder and the firearm charge.  (Trial Transcripts, TT I – TT VII,[2] ECF No. 18-5 through 18-14).

On the night of October 31, 2006, Linzy Reeves was shot and killed.  Johnnie Griggs testified that on that night he was selling drugs with petitioner near his aunt's house.  Linzy Reeves pulled up in his car and petitioner approached it.  Mr. Reeves was also attempting to sell drugs.  (TT V at 7-16, 55-59, ECF No. 18-10, PageID.642-44, 654-55).  When petitioner returned, he indicated to Johnnie Griggs that he wanted to rob Mr. Reeves.  Petitioner asked Johnnie Griggs for the nine-millimeter Hi-Point handgun.  Johnnie Griggs then retrieved the loaded gun from his aunt's house and gave to petitioner.  Johnnie Griggs then left in a car driven by Jennifer Griggs, his

---

[2] The reason the trial transcript numbering only reaches "TT VII" is that transcripts for two different dates are labeled as "Volume VI."  (ECF No. 18-12, PageID.669; ECF No. 18-13, PageID.683).

sister, and his cousin, Gary Griggs.  (*Id.* at 16-22, 36-37, 59, 63, PageID.644-46, 649, 655-56).

A short time later, petitioner called Johnnie Griggs and indicated that he had an emergency and he needed to be picked up.  When they retrieved petitioner, he was frantic and bleeding from his left hand.  Petitioner related that, while he was trying to rob Linzy Reeves, they fought for possession of the gun.  Petitioner was bleeding from a hole in his left hand.  Jennifer Griggs drove to a Walgreen's store where Johnnie Griggs went inside and obtained bandages for petitioner's injured hand.  Petitioner still had the gun after the incident, but the gun's slide was "locked back" and its clip was missing.  Johnny Griggs did not want the gun back because petitioner indicated that he shot someone with it.  (*Id.* at 23-35,45, PageID.646-49, 651).

Linzy Reeves was able to drive away from the location where he had been shot, but he did not make it very far.  The jury heard testimony from Cassandra Cochran and the recording of a 911 call she made that night, reporting that a Lincoln Town Car had stopped outside Rinaldi's Pizza.  It was in a traffic lane, headed in the wrong direction and obstructing traffic.   (TT III at 25-29, ECF No. 18-7, PageID.578).  Ronald O'Berry, the manager of Rinaldi's Pizza, testified that, around 8 p.m. on Halloween night, 2006, a man stumbled into the pizza shop, stated that he had been shot, and collapsed onto the floor.  The manager called 911 and the jury heard the recording of that call.  (*Id.* at 8-10, PageID.573-74).

Police responded and found Linzy Reeves on the floor just inside the pizza shop's doorway.  He was bleeding from gunshot wounds.  Mr. Reeves was taken to the

hospital by ambulance where he died a short time after his arrival.  (TT III 32-44, ECF No. 18-7, PageID.579-82).

Dr. Start, a forensic pathologist, testified that Linzy Reeves had two gunshot wounds:  a wound to his left arm and a wound to his left lower chest/upper abdomen area.  The gunshot wound to the upper abdomen was the cause of Mr. Reeves's death. Mr. Reeves had gunpowder stippling or tattooing around the entrance to the arm wound, indicating that the shot had been fired at a relatively close range.  Dr. Start testified that he did not find stippling around the abdominal wound, an indication that both wounds could have been sustained by a single gunshot.  (TT IV at 43-66, ECF No. 18-8, PageID.607-13).

Police recovered three nine-millimeter casings from inside the Lincoln.  All three shots had been fired from the same Hi-Point pistol.  The officers recovered one bullet from the center console, and Dr. Start recovered one from Mr. Reeves's body. (TT II, 79-88, ECF No. 18-6, PageID.555-57; TT III at 66-81, ECF No. 18-7, PageID.587-91; TT IV at 27-37, 56-57, ECF No. 18-8, PageID.603-05, 610).  There were two bullet holes in the Lincoln.  One hole was through the roof and the other was down inside the console.  (TT II at 73-79, ECF No. 18-6, PageID.554-55).  The forensic evidence indicates that the pistol was located in the front passenger's side of the vehicle at the time the shots were fired.  (*Id.* at 92-111, PageID.558-63).

On November 6, 2006, police received a tip regarding petitioner's involvement in the shooting.  (TT VI at 6-7, ECF No. 18-13, PageID.685).  Petitioner had been arrested the day before on an unrelated matter and was lodged at the Kent County Jail.  (TT III at 92, ECF No. 18-7, PageID.594).  Petitioner's left hand was wrapped in a bandage, and he reported that the puncture injury at the base of his thumb on his left hand was a basketball injury where a screw went through his hand.  (*Id.* at 92-93, PageID.594).

On November 6, 2006, detectives went to the Kent County Jail to interview petitioner.  Petitioner waived his *Miranda* rights and gave a recorded statement.  The jury heard this recording.  (TT VI at 8-15, 40, ECF No. 18-13, PageID.685-87, 693).  Petitioner admitted being in Linzy Reeves's car on the night that he was killed.  He stated that Linzie Reeves asked for some "weed," and that he got into the passenger side of Mr. Reeves's vehicle and rode with him.  Petitioner stated that they drove to an area where another man got into the driver's side rear and sat in the middle of the back seat.  Petitioner related that this unknown man said he had "weed," then pulled a gun out and pointed it at petitioner.  Petitioner told the detectives that he grabbed the gun with his left hand and pushed it, then got out of the car and ran.  He was shot in the hand when he grabbed the gun.  According to petitioner, the man then pointed the gun at Linzy Reeves and told him not to move.  As petitioner was running away, he heard other shots, and he saw the man get out of the car and run.  Mr.

Reeves's car pulled off and drove in the same direction as the shooter.[3]

Petitioner appeared to be concealing his left hand during the interview, and he refused a detective's repeated requests to see it.  Police obtained a search warrant. (TT VI at 13-14, ECF No. 18-13, PageID.687).  The jury saw the November 6, 2006, photographs of petitioner's left hand.  (TT III at 87-89, ECF No. 18-7, PageID.592-93).  Dr. Start testified that the injury to plaintiff's left hand was consistent with a gunshot wound.  (TT IV at 66-70, ECF No. 18-8, PageID.613-14).

Jamal Glenn testified that he knew petitioner, and that they grew up together. (TT VI at 12, ECF No. 18-12, PageID.672).  In early November 2006, Mr. Glenn and petitioner had been inmates at the Kent County Jail.  (*Id.* at 15-16, PageID.673). Petitioner had a wound on his left hand.  Petitioner related that he had shot himself on Halloween during a robbery.  He described a struggle over a gun, with the first shot hitting his hand and the second shot hitting the victim.  Petitioner obtained both drugs and money and he fled the scene of the shooting.  (*Id.* at 16-25 PageID.673-75).

The attorneys presented their closing arguments.  The prosecutor argued that the evidence supported a verdict finding petitioner guilty beyond a reasonable doubt of first-degree felony murder and the use of a firearm during the commission of a felony.  Petitioner's attorney argued that the jury should credit the statement petitioner gave to detectives and find him not guilty.  He also argued that some of the

---

[3] The content of the recorded interview does not appear in the trial transcript. Petitioner's appellate counsel had the opportunity to listen to the interview.  Her summary, (*see* Defendant-Appellant's Brief at 5, ECF No. 18-16, PageID.743), provides the content.

witnesses testifying against petitioner were not credible because they testified in the hope of obtaining reductions in their prison sentences.  (TT VII at 5-47, ECF No. 18-14, PageID.701-11).  Judge Johnston gave the jury its instructions.  There were no objections.  (TT VII at 48-76, ECF No. 18-14, PageID.711-18).  Among other things, Judge Johnston reiterated that the "lawyers' statements and arguments are not evidence."  (*Id.* at 51, PageID.712).

The jury convicted petitioner, and on May 18, 2010, the trial court judge sentenced petitioner as previously indicated.  (*Id.* at 77-78, PageID.719; Sentencing Transcript, ECF No. 18-15; Judgment of Sentence Commitment to Corrections Department, ECF No. 18-16, PageID.730).

### B.    Subsequent Proceedings

Petitioner pursued an appeal in the Michigan Court of Appeals.  He raised the issue he is now raising as Ground I in his habeas corpus petition.  (ECF No. 18-16, PageID.738).  On December 1, 2011, the Michigan Court of Appeals issued its decision affirming petitioner's convictions and sentence.  (ECF No. 18-16, PageID.726-28).  The Michigan Supreme Court denied petitioner's application for leave to appeal on the issue rejected by the Michigan Court of Appeals.  (ECF No. 18-17, PageID.801, 804).

On August 19, 2013, petitioner filed his petition for federal habeas corpus relief.  (ECF No. 1).  On October 2, 2013, the Court entered an order granting petitioner's motion for stay and abeyance and this case was administratively closed. (ECF No. 4).

-11-

On November 5, 2013, petitioner filed a motion for relief from judgment in the trial court.  (ECF No. 18-18, PageID.898-903).  On April 11, 2014, Judge Johnston denied that motion.  (ECF No. 18-19, PageID.975-85).  On May 27, 2014, Judge Johnston denied petitioner's motion for reconsideration.  (ECF No. 18-21).

Petitioner sought leave to appeal in the Michigan Court of Appeals.  (ECF No. 18-22, 18-23).  On February 23, 2015, that court denied petitioner's application because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  (ECF No. 18-24, PageID.1197).  On February 2, 2016, the Michigan Supreme Court denied petitioner's application for leave to appeal.  (ECF No. 18-24, PageID.1123).

On March 4, 2016, petitioner filed a motion to reopen this case, lift the stay, and permit him to file his proposed amended petition.  (ECF No. 7).  On March 10, 2016, the Court granted that motion.  (ECF No. 9).  Respondent has filed her answer (ECF No. 17), and the Amended Petition is ready for decision.

### Discussion

## I.    Evidentiary Rulings

In Ground I, petitioner claims that his due process rights were violated by the introduction of irrelevant and unfairly prejudicial testimony advising the jury of his incarceration and drug dealing.  (ECF No. 10, PageID.174; ECF No. 18-16, PageID.745-71; ECF No. 19, PageID.1217-21).

It is well-established that this Court may not grant habeas relief on the basis of error in the application of state rules of evidence.  *See Estelle v. McGuire*, 502 U.S.

-12-

62 (1991).  An inquiry whether evidence was properly admitted under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.

Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted).  Petitioner cannot meet this difficult standard.

The Michigan Court of Appeals rejected petitioner's due process claim.  It found no error in the admission of the evidence, and that if any error had occurred, it was harmless.  (Op. at 1-2, ECF No. 18-16, PageID.726-27).  Johnnie Griggs's testimony was properly admitted under the *res gestae* exception of Rule 404(b)(1) of the Michigan Rules of Evidence.  (*Id.*).  "Johnnie's testimony illustrated that [petitioner] was selling drugs when the victim and [petitioner] approached each other," and it "explained the circumstances surrounding the victim's death and provided the jury with the complete story."  (*Id.* at 2, PageID.727) (citation and quotation omitted).

Jamal Glenn's testimony that petitioner had been incarcerated was properly admitted into evidence because it did not refer to any specific crimes, wrongs, or acts committed by petitioner.  Moreover, the prosecution did not offer the testimony to

-13-

show petitioner's character or propensity to commit the charged crime. The testimony "was offered to establish, and was relevant to show, the context and setting surrounding [petitioner's] statements to Glenn." (*Id.*). Even assuming the evidence had been excluded, the jury would have known about petitioner's incarceration through the testimony of other witnesses, such as Detective Nagel and the technician who photographed petitioner's left hand pursuant to the search warrant. (*Id.*).

The record did not unequivocally establish that Gary Griggs's grand jury testimony that petitioner was learning how to "hustle" was read into evidence, but assuming that it had been admitted, any error was harmless. (*Id.*). The Court of Appeals found it "unlikely" that the jury concluded that petitioner was a drug dealer based on his "learning how to 'hustle.' " (*Id.*). Moreover, the jury knew from the admissible testimony of Johnnie Griggs that he and petitioner were selling drugs when petitioner and the victim approached each other. If the "hustle" testimony had been excluded, "the jury still would have been aware of [petitioner's] drug dealing. In addition, the evidence of [petitioner's] guilt was strong." (*Id.*).

Petitioner has not addressed or carried his burden under 28 U.S.C. § 2254(d). "[T]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Cooper v. Haas*, No. 17-1235, 2018 WL 1224451, at *3 (6th Cir. Jan. 9, 2018) ("[T]he admission of other acts evidence was not contrary to, nor did it involve an unreasonable application of, clearly established federal law because '[t]here is no clearly established

Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.' ") (quoting *Bugh*, 329 F.3d at 512).

Further, the appellate finding that any error was harmless, given the strong evidence of petitioner's guilt, is well supported.  Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting the arguments found in Ground I was " 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Dunn v. Madison*, 138 S. Ct. 9, 11 (2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## II.    Prosecutorial Misconduct

Ground II is petitioner's claim that he was deprived of due process by prosecutorial misconduct:  vouching for witnesses, vouching for witnesses's character, improperly questioning witnesses, mischaracterizing facts in evidence, and appealing to jurors to convict petitioner as part of their civic duty.  In addition, petitioner argues that his trial counsel was ineffective in failing to object to instances of prosecutorial misconduct.  (ECF No. 10, PageID.175; ECF No. 10-1, PageID.204-28; ECF No. 19, PageID.1221-28).

### A.    Prosecutorial Misconduct

The scope of habeas review regarding allegations of prosecutorial misconduct is narrow.  This court does "not possess supervisory powers over state court trials." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).  "It is the responsibility of the state

courts to police their prosecutors; [this court has] no such authority." *Id.* "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.' " *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (" '[T]he appropriate standard of review for ... a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.' ") (quoting *Darden*, 477 U.S. at 181).   To be grounds for habeas corpus relief, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181; *see Parker v. Matthews*, 567 U.S. 37, 45 (2012).

The trial court judge rejected all petitioner's claims of prosecutorial misconduct.   (Op. at 6-7, ECF No. 18-19) The prosecutor's arguments were appropriate and did not constitute vouching.  (*Id.* at 6, PageID.980).  The prosecutor did not mischaracterize Dr. Smart's testimony.  If there had been an inaccuracy, it would have been harmless because the jury had been instructed that "the statements of lawyers are not evidence."  (*Id.*).  Judge Johnston rejected petitioner's argument that it was improper for the prosecutor to argue that the victim was a drug dealer. The prosecution's theory was that this was a drug deal gone wrong and there was evidence to support that theory.   Petitioner did not suffer prejudice from the purported instances of prosecutorial misconduct.  (*Id.* at 6-7, PageID.980-81).

Because the trial court rejected petitioner's claims for lack of merit, petitioner faces the significant additional hurdle of demonstrating that the decision of the state

court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Even assuming that petitioner had shown a constitutional violation, the "harmless-error standard announced in *Brecht v. Abrahamson*, 507 U.S. 619, 622-23 (1993), applies to prosecutorial misconduct claims on federal habeas review."[4]  *Roby v. Burt*, No. 17-2043, 2018 WL 1176512, at *3 (6th Cir. Feb. 14, 2018) (citing *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005)); *see also Cooper v. Haas*, No. 17-1235, 2018 WL 1224451, at *3 (6th Cir. Jan. 9, 2018).  Further, the trial court's decision finding that any prosecutorial misconduct that may have occurred was harmless error is entitled to AEDPA deference.  *See Miller v. Colson*, 694 F.3d 691, 699-700 (6th Cir. 2012) (state appellate court finding of harmless error entitled to AEDPA deference).  Thus, this Court "may not grant [petitioner]'s habeas petition ... if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner."  *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003).

Petitioner has not addressed, much less has he carried his burden here.  *See* 28 U.S.C. § 2254(d).

---

[4] Constitutional errors are deemed harmless on habeas review unless the petitioner establishes that they "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. at 638.

B.    Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Judge Johnston applied the *Strickland* standard and rejected all petitioner's claims of ineffective assistance of trial counsel.  Among other things, he observed that petitioner's trial attorney "was successful in preventing petitioner from being convicted of first-degree felony murder, for which he was charged.  Second-degree

-18-

murder was the lesser included offense.  Given the extensive evidence presented against [petitioner], this was a noteworthy accomplishment of defense counsel." (Op. at 5, ECF No. 18-19, PageID.979).

Because the trial court decided petitioner's claims of ineffective assistance of counsel on their merits, its decision must be afforded deference under AEDPA.  *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*.  *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012).  This creates a "high burden" for petitioner.  *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013).  "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The Supreme Court has described this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1375-77; *Yarborough v.*

*Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).  The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015).  Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

Petitioner has not addressed, much less carried, his burden under 28 U.S.C. § 2254(d).

## III.  Jury Instructions

In Ground III, petitioner argues that his due process rights were violated because the jury instructions on second-degree murder excluded an element from the offense.  (ECF No. 10, PageID.177; ECF No. 10-1, PageID.229-34; ECF No. 19, PageID.1228-29).  In Ground IV, petitioner argues that he was entitled to a lesser included offense instruction for manslaughter.  Petitioner claims that his trial attorney was ineffective in failing to object to the second-degree murder instruction and in failing to request the manslaughter instruction.  (ECF No. 10, PageID.178; ECF No. 10-1, PageID.234-38; ECF No. 19, PageID.1229-31).

A.    <u>Jury Instructions</u>

There is no general federal right to a properly instructed jury.   With few exceptions, the substance of jury instructions is a matter of state law.   *See Estelle v. McGuire*, 502 U.S. 62, 70-72 (1991).   Consequently, a federal court may grant habeas corpus relief based on errors in state jury instructions only in "extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).   A habeas court may not grant relief on the basis of an allegedly erroneous instruction merely because it disagrees with the instruction.   The only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).   "It must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some constitutional right." *Estelle*, 502 U.S. at 72 (quotations and citation omitted).   "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. at 147).

Judge Johnston found no error in the jury instructions.   As to Ground III, the "without justification or excuse" instruction that petitioner claimed had been improperly omitted did not apply.   "Such an instruction would only be appropriate if [petitioner] had asserted a claim of self-defense."   (Op. at 7, ECF No. 18-19, PageID.981).   Self-defense "was not the theory put forth by the defense in this case.

-21-

It was not an element the prosecution needed to prove, nor a point that the jury should have been instructed on."  (*Id*.).

Petitioner "is correct that the trial court's second-degree murder instruction did not state all of the elements associated with second-degree murder." *People v. Diaz-Gaskin*, No. 329223, 2017 WL 535546, at *11 (Mich. Ct. App. Feb. 9, 2017).  "The elements of second-degree murder are '(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death.' " *People v. Bergman*, 879 N.W.2d 278, 288 (Mich. Ct. App. 2015) (quoting *People v. Smith*, 731 N.W.2d 411, 414 (Mich. 2007)).   "However, as is recognized in the use notes accompanying the pertinent model jury instruction, *M Crim. JI* 16.5, the fourth element (i.e., absence of a lawful justification or excuse for the homicide), 'may be omitted if there is no evidence of justification or excuse, and the jury is not being instructed on manslaughter or any offense less than manslaughter.' " *Diaz-Gaskin*, 2017 WL 535546, at *11.   There was no evidence of lawful excuse or justification for killing Linzy Reeves.

There is no rule that requires a court to instruct on a defense where there is no evidence to support it. *See, e.g., Delo v. Lashley*, 507 U.S. 272, 277 (1993) ("Nothing in the Constitution obligates state courts to give mitigating circumstance instructions when no evidence is offered to support them.").  Petitioner has failed to demonstrate that the state court's determination that he was not entitled to an instruction regarding the fourth second-degree murder element is contrary to, or an

unreasonable application of, clearly established federal law.  *See Diaz-Gaskin v. Skipper*, No. 1:18-cv-1091, 2018 WL 4927113, at *12-13 (W.D. Mich. Oct. 11, 2018).

Further, regarding Ground IV, Judge Johnston held that the failure to give an involuntary manslaughter instruction was not error, as petitioner was not charged with that offense.  (Op. at 7, ECF No. 18-19, PageID.981).  Petitioner "was charged with first-degree felony murder, as the prosecution had claimed that the homicide occurred during an armed robbery." (*Id.*).  Judge Johnson simply "elected to instruct the jury on the lesser included offense of second-degree murder." (*Id.*).  But the Michigan Supreme Court has held that statutory involuntary manslaughter is not a necessarily included lesser offense to second-degree murder.  *See People v. Smith*, 731 N.W.2d at 415-16.  Rather, it is a cognate lesser offense of murder.[5]  *Id.* at 416.

Under Michigan law, a trial judge may only instruct on necessarily lesser included offenses supported by the evidence, and may not instruct on cognate lesser included offenses.  *People v. Cornell*, 646 N.W.2d 127, 140 (Mich. 2002).  Accordingly, petitioner would not have been entitled to such an instruction if his attorney had requested it.[6]  *See Huckaby v. Lafler*, No. 2:09-cv-10030, 2010 WL 5104844, at *17 n.5 (E.D. Mich. June 28, 2010).

---

[5] "Cognate offenses share several elements, and are of the same class or category as the greater offense, but the cognate lesser offense has some elements not found in the greater offense." *People v. Smith*, 731 N.W.2d at 416, n. 3 (quoting *People v. Mendoza*, 468 Mich. 527, 532 n. 4 (2003)).

[6] The Sixth Circuit, sitting *en banc*, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*).

"Federal courts may grant habeas relief only on the basis of federal law that has been clearly established by the Supreme Court.  [28 U.S.C.] § 2254(d)(1).  The Supreme Court, however, has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case."  *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014).

B.    Ineffective Assistance of Counsel

The trial court rejected petitioner's claims of ineffective assistance of trial counsel found in Grounds III and IV.  Petitioner did not attempt to demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*.  Accordingly, he has not addressed, much less carried, his burden under 28 U.S.C. § 2254(d).

## IV.    Sufficiency of the Evidence

Ground V is petitioner's argument that there was insufficient evidence to convict him of second-degree murder.  (ECF No. 10, PageID.183; ECF No. 10-1, PageID.238-42; ECF No. 19, PageID.1232-34).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*;

see *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial.").  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The trial court judge ruled directly on this claim.  Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007).  Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA.  *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008).  Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*.  *See Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015).  Review "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x. 431, 436 (6th Cir. 2007).  This standard presents a "nearly insurmountable hurdle" for the habeas petitioner.  *Davis v. Lafler*, 658 F.3d at 534.  "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).  In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).  Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.  Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Judge Johnston articulated the appropriate standard under *Jackson v. Virginia*, citing a state case adopting this standard.  (Op. at 8, ECF No. 18-19, PageID.982).  He found that there was sufficient evidence to support the jury's verdict on second-degree murder.  The jury made credibility determinations regarding the testimony of witnesses who might receive more favorable treatment in exchange for their testimony.  (*Id.* at 8-9, PageID.982-83).

I find that Ground V does not provide a basis for habeas corpus relief.  The decision of the trial court judge upholding the sufficiency of the evidence regarding petitioner's second-degree murder conviction was not an unreasonable application of the *Jackson v. Virginia* standard.

## V.    Assistance of Appellate Counsel

Ground VI is petitioner's claim that appellate counsel was ineffective in failing to file a timely motion for a new trial based on an argument that the jury's verdict was against the great weight of the evidence.[7]  (ECF No. 10, PageID.184; ECF No. 10-1, PageID.242-47; ECF No. 19, PageID.1234-35).

It is well settled that, where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.").  An appellant has no constitutional right to have every non-frivolous issue raised on appeal.   " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.

It is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than

_____

[7] Petitioner also claims ineffective assistance of appellate counsel as the reasons he did not raise Grounds II through VI on direct appeal.  (ECF No. 10 at PageID.175-84).

another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*

The trial judge found that this issue, and all other issues that petitioner raised in his motion for relief from judgment, lacked merit, and that petitioner's appellate counsel was not ineffective.  (Op. at 5, ECF No. 18-19, PageID.979).  Because Michigan's courts rejected petitioner's claims of ineffective assistance of appellate counsel for lack of merit, he faces the significant additional hurdle imposed by 28 U.S.C. § 2254(d).

Under Michigan law, the test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v. Musser*, 673 N.W.2d 800, 803 (Mich. Ct. App. 2003).  Petitioner disagrees with the jury's credibility determinations regarding witness testimony.  "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial."  *People v. Lemmon*, 576 N.W.2d 129, 139 (Mich. 1998). "Petitioner's appellate counsel cannot be faulted for failing to raise meritless issues." *Smith v. Brewer*, No. 1:17-cv-31, 2018 WL 5847391, at *10 (W.D. Mich. Oct. 11, 2018) (citing *Coley v. Bagley*, 706 F.3d at 752).

I find that Ground VI does not provide a basis for habeas corpus relief. Petitioner has not shown that the trial court's decision rejecting his claims of ineffective assistance of appellate counsel was "contrary to, or an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).

**VI.**    Certificate of Appealability

Even though I have concluded that petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

-29-

I find that reasonable jurists could not conclude that this Court's denial of petitioner's claims would be debatable or wrong.  Accordingly, I recommend that a certificate of appealability be denied.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.  I also recommend that a certificate of appealability be denied.

Dated:  December 5, 2018          /s/  Phillip J. Green
                                  PHILLIP J. GREEN
                                  United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).